In this case, the United States v. Cherry. Mr. Thompson. Good afternoon, and may it please the Court. My name is Michael Thompson. I represent the defendant, Appellant Deandre Cherry, in this case. Mr. Cherry appeals for his criminal conviction based on the denial of a suppression motion wherein he claimed that his arrest in the search of his vehicle was unlawful and unconstitutional. That issue was compounded by a Brady violation that occurred in relation to photographs taken of the evidence recovered from the vehicle. But the Court need not even reach that issue if it decides for him on the issue of the unconstitutional arrest. Mr. Cherry's arrest was affected based on information that came from a cooperating source that was not tested. He was not a known source. There was no corroboration done of any of the information the source provided. This isn't a situation where the source was anonymous, where substantially more corroboration would be necessary, but neither was it a case where the source had a history of providing reliable information with law enforcement. So additional scrutiny is required. Additional police work needed to be done to corroborate the information the source was providing to determine its reliability, and that simply was not done in this case. Essentially, the source said- Mr. Thompson, the bottom line question, it seems to me, is does it really matter if the drugs were in plain view if inevitably they would have been discovered during an inventory search? Well, Your Honor, even if we were to reach the issue of whether the vehicle could have been searched following the arrest, which we need not get to if the arrest was unlawful, of course, but the vehicle wasn't necessarily going to be seized. There was no need to seize the vehicle, which was parked in a parking lot to a private business. It wasn't on a public street. It wasn't impeding traffic. There were no safety concerns. Do you really think the police would have left a car sitting in a parking place, whatever, after the arrest? Absent probable cause to seize it, Your Honor, I certainly think they should have. In a drug case? Excuse me? In a drug case like this? In a drug case- As opposed to, we're arresting this individual because he or she is way overdue on child support payments, and unfortunately there's a warrant out for their arrest. And, Your Honor, this is a drug case, but it's a drug case in which the information they did have suggested that Mr. Cherry would have neither drugs nor money on him. So with kilogram quantities of narcotics in place, if we stipulate for discussion purposes, that the arrest is okay. Yes. The police department was under a legal obligation, in your view, to leave the car where it was and did not touch it. I certainly think it is the case that it was not inevitable that they needed to seize it. What authority do you have for that? Simply the common sense proposition that there was no need, there was no necessity in taking it. Inevitable discovery, the argument proposed by the government relied on them seizing it for an inventory, so it's not for a probable cause. Is that what the test turns upon? Has this court ever said that it turns upon whether it's necessary to impound the car? Well, no, Your Honor, not explicitly in those terms, but in order for it to be inevitable, it would need to be necessary just by the definition of the term inevitable. Saying that, well, maybe they could have taken it is not the same thing as saying they definitely would have, which is what's necessary to say that they would have found it in any case. It's not just that, well, maybe they would have decided they could have tried to take it. It's that they certainly would have and, therefore, the evidence would have been discovered regardless. But they shouldn't have even gotten to that point, Your Honor, because the information they had to even look in the car wasn't reliable to begin with. Essentially what they had is an informant who said, oh, in the past I've talked to this guy and I've set up a deal. They didn't do anything to corroborate that other than have him make a call to that individual, to Mr. Cherry, who they But isn't his reliability reinforcement everything he says will happen does? A white Mercedes will come to meet me in a particular parking lot, an average height 200 pounds, African-American man will come to meet me. Your Honor, that happened. The individual showed up as he said he would when he called him and told him to, but that doesn't supply any information to corroborate that there was anything criminal that was going to occur. In hindsight, certainly they can say we know it did, but all they had at the time was information suggesting that the, excuse me, the cooperating source knew Mr. Cherry and could get him to show up in a parking lot. There wasn't any information suggesting that it was an actual drug deal that was being discussed other than the unreliable word of the informant who had just been arrested. And it's frankly naive to assume that somebody in that situation is always going to be telling the truth, which is why this court has required corroboration. Arrested in connection with trying to take possession of 26 kilograms of cocaine. I mean, that's what the source said that was going to happen, Your Honor, that I think 13 of those kilograms was to be delivered to Mr. Cherry. But they were only relying on his word that that was true. There was nothing from Mr. Cherry, nothing Mr. Cherry said or did to suggest that he was going to try to obtain those kilograms. Other than what the source. I mean, I have a difficult time, and given all those facts in your brief, I mean, how in the world do you say it's as likely that they're going to a drug deal that they're going to meet in the parking lot to go to a movie? Because there wasn't any information that was actually reliable to suggest that it was a drug deal. They had the informant's word, the informant who had just been arrested and had every reason to implicate anybody other than himself. They had no history of any reliable previous tips from this informant. He had just been arrested. There wasn't a chance to investigate anything he said about Mr. Cherry, whose name he didn't even supply. He gave a nickname for him at the time, other than the fact that he was an average height black man with approximately 200 pounds, that weighed approximately 200 pounds. The fact that he knew this individual and could get him to show up in a parking lot doesn't corroborate anything he says about whether or not he's going to conduct a drug deal with him. And even if the conversation was recorded inside the vehicle, Your Honor, they can't rely upon that to determine whether or not probable cause existed at the time of the arrest because they didn't have access to the contents of the recording. The signal they arranged for the informant to exit the vehicle also was somewhat self-defeating, Your Honor, because he could have gotten out of the vehicle for any number of other reasons. It was sort of preordained that the arrest was going to happen once the signal was decided upon. So that signal doesn't give any additional indication of probable cause. Following that point, the search of Mr. Cherry's vehicle was certainly not permissible because there was no reason to arrest him to begin with. I'll touch briefly on the issue of the Brady problem. The officer in question who took the pictures on his private camera knew that the issue of what order the pictures were taken in was at issue. He was questioned about it at the time he still had the camera in his possession before he sold it in the garage sale. So his later destruction of that disposal of the camera was not permissible. It was a violation of Brady for him to dispose of it when he knew that it was an issue for the defense. If there are no further questions, I will reserve the remaining of my time for rebuttal. Did you reserve time? I attempted to, Your Honor. Well, you may have the two minutes that remain. Thank you, Your Honor. Thank you, Mr. Thompson. Ms. Bonamici. May it please the Court, good morning. Deborah Bonamici on behalf of the United States. Beginning with probable cause. The agents in this case had probable cause to arrest the defendant, as the district court correctly found, on the basis of information provided by the CI or CS, which was corroborated, largely corroborated, by the events that transpired at the Booth's parking lot. As Your Honors have already noted, the quantity of drugs that the CS was caught trying to take possession of to begin with clearly indicated that he planned to, given the large amount, clearly indicated that he planned to deliver those drugs at some point to someone else. His identification of the person took place immediately after his arrest, giving him less time to come up with a plan for faking or creating some story and identifying some other person that he could implicate. The statements that he made regarding his drug dealing and the planned delivery for that evening were inculpatory, giving them added credibility, just no matter what was said and what happened later. He did provide detailed information about the defendant who was scheduled, who he was scheduled to deliver the drug, 13 of the kilos, to giving a description of the person, a nickname that the person went by, a description of the car he drove, which was a fairly unusual car, and a telephone number, a cell phone number. Then he... Is it general, Ms. Bonamici, is it general practice for police to leave a vehicle in a parking lot after an arrest? No, I don't believe it is, Your Honor. The agents testified, in fact, that they planned to take the car, assuming that things went as they unfolded the way they expected, they planned on taking the car from the beginning. And the question of necessity, there really isn't a question of necessity or it's a question of protocol, and it would have been their protocol to take the car, to seize the car after the arrest, and that's what they did do. With respect to going back to the question of PC, as Your Honors have already noticed or noted, the events did actually unfold precisely the way that CS predicted that they would, and the defendant who arrived on the scene conducted himself as though he were there to conduct a drug transaction, not to go to the movies, as you mentioned, Judge Scudder. He circled the parking lot before parking, conducting counter surveillance, parked right next to the CS' car, got out of his car, got into the CS' car, and got out three minutes earlier after looking back at the trap. So the agents very clearly had probable cause to arrest the defendant and the district court did not err in any way in making that finding. With respect to the Brady issue, the defendant's argument was correctly rejected by the district court for a couple of reasons. There was no reason for the agents to believe that metadata on Agent Castaneda's camera would have been relevant. The term metadata was never referred to by any party at any time during any of the extensive briefing that took place before the suppression hearing or at any time during the hearing. And the first request for that information was made a year and a half, almost two years after the ruling on the suppression motion. So there really was no reason whatsoever for the agent to suspect or even think about that. It's true that the defendant cross-examined the agent based on the order of the taking of the pictures, but recall that the agent's testimony was unanimous with respect to when those pictures were taken. And they were taken well after the agents first saw the open satchel in the car in plain view. So both Agents Crawford and Brazzo testified that they saw that immediately after the defendant's arrest, and Agent Castaneda came in afterwards and only after the full search of the car was underway were any of those photographs taken. So the relative timing of the photos is unimportant compared to the timing of the view. Now it's obviously true that there might have been some arguments to be made with respect to the order of the photos, and it's true that the agent didn't have good memory of how it came to pass that the photos were taken or the order that they were taken in. So it's possible that there'd be some way to make a general argument about credibility based on those if it turned out that the photos were taken in the order that the defendant speculates they might have been taken. But none of that was borne out, and in any event, there's no basis whatsoever, as the district court clearly found and correctly found, to say that the agents were acting in bad, or that Agent Castaneda was acting in bad faith when he sold his private camera at a garage sale sometime later. Do you recall, is there, Officer Castaneda, he's the one who took the pictures, right? Yes. He was directed to take the pictures? Yes. Was there any testimony as to why he took a picture of the, what was it, it was a satchel, right, or a duffel bag or something? Why he took it closed? He said he was told to take the pictures, and he did not have a clear memory of even who told him or how it went. He was told to take the pictures, he took the pictures, and there was not a good, no one had a good memory of that event, and no full explanation was ever given. As to why there was that direction? Right. So there's nothing in the record about that. So if there are no further questions, we would say that based on the items I've raised and the arguments made in our brief, we would ask the Court to affirm. Thank you, Ms. Phillips. Mr. Thompson? Your Honor, the government focuses a lot on the issue of the circling of the parking lot before Mr. Cherry arrived to meet with the cooperating source. I just don't see that as adding anything to the probable cause calculus. They didn't indicate exactly what made that so suspicious. He could have simply been looking to see where the car was parked that he was meeting with. He could have been doing any number of things. There's nothing about driving around the parking lot that makes it any more likely that he's going to a drug deal. Essentially what happened here is the informant said, I know this guy, he's the one I would deliver these drugs to, I can get him to meet with me in the parking lot. The guy shows up. That's all they have. Allowing this to be enough probable cause to warrant an arrest basically just rubber stamps anything that a cooperating informant says after their arrest. Even if it is inculpatory for them, that doesn't mean that it's reliable. You can't base an arrest determination on something that a self-serving individual says right after their arrest just because they can get an individual to show up. All he's proved is that he knows the person and that he can get them to agree to meet him. He hasn't proved that the guy was actually involved in a criminal offense or that there is even probable cause to believe as much, which is what's necessary for the arrest in this case, Your Honor. As far as why the photo of the bag was taken with it closed, there never was an explanation for that in the record, Your Honor, and it is a little suspicious because it's not a duffel bag type bag. It's a messenger bag with a flap that closes downward. So in order to take it with it open, it has to be propped open. It wouldn't be a natural position for the bag to rest in sitting in the passenger seat of a car that was just moving for the flap to still be open, nor for the reasons that Mr. Cherry argued below. Would it make much sense for a drug dealer to be riding it around with it open with drugs inside? And that was part of the reason that the officer's testimony about seeing it open was argued to be incredible. So unless there are any further questions, Your Honor, we ask that the conviction be overturned and the case remanded. All right. Thank you, Mr. Thompson. Thank you, Mr. Podolici. Case is taken under advisement and the court will stand.